# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| ANGELA S. MORRISON,<br><br>      Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>      Defendant. | No. 6:17-CV-02007-LRR<br><br>**REPORT AND RECOMMENDATION** |

_____

The claimant, Angela S. Morrison (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits under Title II of the Social Security Act, sections 201-34 (Act) (now codified at 42 U.S.C. §§ 401-34). Claimant contends that the Administrative Law Judge (ALJ) erred in determining that she was not disabled. For the reasons that follow, I recommend that the District Court **set aside** the Commissioner's decision and **remand** this case for further proceedings consistent with the Court's instructions.

## I.    BACKGROUND

I adopt the facts set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 13).

Claimant was born in 1968, and was 39 years old when she allegedly became disabled and 46 years old at the time of the decision here reviewed. (*See* AR 130, 645).[1] Claimant has past relevant work as a Certified Nursing Assistant, Licensed Practical

---

[1] "AR" refers to the administrative record below.

Nurse, warehouse packer, and cleaner. (AR 174). Claimant was last insured on December 31, 2014. (AR 632).[2]

On September 2, 2010, claimant filed an application for disability insurance benefits alleging a disability onset date of August 15, 2008. (Doc 13, at 2). The Social Security Administration denied the application initially and on reconsideration. (AR 76, 81). A hearing was held before ALJ Eric S. Basse on August 15, 2012. (AR 31). On August 29, 2012, the ALJ issued a decision denying the claim. (AR 11-25). Notably, the ALJ's decision assigned little evidentiary weight to the medical opinion of claimant's treating psychiatrist, Dr. M.A. Chowdhry, as recorded in the doctor's August 3, 2012, responses to claimant's interrogatories. (AR 708; *see also* AR 881-890). The Appeals Council subsequently denied review. (AR 1).

On January 8, 2014, claimant filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *Morrison v. Colvin*, No. 6:14-cv-02002 (N.D. Iowa) (Doc. 3). On August 5, 2014, the Honorable Edward J. McManus, Senior United States District Judge, reversed the ALJ's decision and remanded the case "for further consideration of the opinion of the treating psychiatrist and the remainder of the medical record." (AR 728). The Court found that, "[i]f a treating medical expert's opinion is supported by the record, which it is in this case, it must be given controlling weight, i.e. it must be adopted." (AR 727). Pursuant to this instruction, the Appeals Council vacated the Commissioner's decision and remanded the case to an ALJ for further proceedings consistent with the Court's order. (AR 732).

A supplemental hearing was held before ALJ Basse on March 20, 2015. (*See* AR 789; Doc 13, at 2). The ALJ again denied the claim, finding that claimant was not

---

[2] To be entitled for disability insurance benefits, claimant must show the existence of a disability on or before the date that her insured status expired. *Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994).

disabled. (AR 627). In his written decision, ALJ Basse again assigned "little evidence" to the opinion of claimant's treating psychiatrist. (AR 639). On November 19, 2015, claimant filed exceptions with the Appeals Council, arguing that the ALJ failed to apply the proper weight to the treating doctor's opinion. (AR 821-27). On December 14, 2016, the Appeals Council declined to assume jurisdiction, stating that "the [ALJ's] decision adequately complies with the directives of the [District] Court and Appeals Council and is supported by substantial evidence." (AR 619).

On February 28, 2017, claimant filed the instant complaint in this Court. On September 6, 2017, the Court deemed the case fully submitted and ready for decision. That same day, the Honorable Linda R. Reade, United States District Judge, referred this case to the undersigned, Chief United States Magistrate Judge C.J. Williams, for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

3

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. (*Id.* § 404.1572). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. (*Id.*).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

4

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his past relevant work, then he is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite . . . her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of fairly and fully developing the record before making a determination about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).

The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status through December 31, 2014, the date last insured:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since August 15, 2008, the alleged onset date of her disability. (AR 633).

At Step Two, the ALJ found that claimant had the severe impairments of "obesity, asthma, recent onset diabetes mellitus, major depressive disorder, anxiety disorder not otherwise specified . . ., dysthymic disorder, dependent personality disorder, and substance abuse disorder." (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments equaled a presumptively disabling impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (*Id.*).

At Step Four, the ALJ found that claimant had the residual functional capacity to perform light work with the following limitations: Claimant could "only occasionally climb, balance, stoop, kneel, crouch, and crawl," claimant could "have no exposure to extremes of cold, heat, or humidity," claimant was "limited to simple, routine tasks," "claimant could have only occasional interaction with supervisors and coworkers, [and] only [in] small groups," and there could be "no production rate pace requirement." (AR 634). Also at Step Four, the ALJ determined that claimant was unable to perform any past relevant work. (AR 643).

At Step Five, the ALJ determined there were jobs that existed in significant numbers in the national economy that claimant could have performed in light of her age, education, work experience, and residual functional capacity. (AR 643). As a result,

6

Case 6:17-cv-02007-LRR-CJW   Document 18   Filed 10/17/17   Page 6 of 14

the ALJ determined that claimant was not disabled at any time from the alleged onset of disability through the date last insured. (AR 644).

## IV. DISCUSSION

Claimant argues that the Commissioner's decision must be reversed on account of the ALJ's assignment of "little evidence" to the opinion of Dr. Chowdhry, claimant's treating psychiatrist. (Doc. 14, at 4). Specifically, claimant argues that this finding fails to follow the Court's order that Dr. Chowdhry's opinion be accorded controlling weight pursuant to 20 C.F.R. §§ 404.1527(c)(2). (*Id.*).[3]

### A. Legal Standard for Procedural Error

When an agency action is found to be "without observance of procedure required by law," the District Court must set the action aside. 5 U.S.C. § 706(2)(D); *Trifid Corp. v. Nat'l Imagery & Mapping Agency*, 10 F. Supp. 2d 1087, 1095 (E.D. Mo. 1998). Procedural errors are reviewed *de novo*. *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003). However, even where an error is found to have occurred, the familiar doctrine of harmless error applies. *South Dakota v. U.S. Dep't of Interior*, 787 F. Supp. 2d 981, 997 (D.S.D. 2011); *see also* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."). Although the burden to overcome the presumption of harmless error rests with the party attacking the agency's decision, the doctrine does not

---

[3] Claimant argues alternatively that, due to the ALJ's disregard of Dr. Chowdhry's medical opinion, the ALJ's residual functional capacity assessment is not supported by substantial evidence. (Doc. 14, at 5-20). In particular, claimant contends that Dr. Chowdhry's opinion is entitled to controlling weight because it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence on the record. I find it unnecessary to reach the substance of this argument. As I explain below, the Court has already found that Dr. Chowdhry's opinion is entitled to controlling weight. I decline to speculate whether the ALJ's residual functional capacity determination would be supported by substantial evidence had the ALJ correctly assigned controlling weight to Dr. Chowdhry's expert opinion.

"impose a complex system of 'burden shifting' rules or a particularly onerous requirement." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### B. The Court's Instruction on Remand

Claimant argues that the ALJ erred in failing to apply controlling weight to the opinion of Dr. Chowdhry on remand. She invokes the law of the case doctrine, which generally prohibits the relitigation of an issue already adjudicated in a lawsuit. The doctrine applies in cases remanded from the District Court for further agency consideration. *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997). Implicit to the law of the case is "the principle that inferior tribunals are bound to honor the mandate of superior courts within a single judicial system." *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995). On remand, a lower tribunal must "adhere to any limitations imposed on its function" by a reviewing court. (*Id.*). Failure to follow a superior court's mandate is only permitted where "a party introduces substantially different evidence, or the prior decision is clearly erroneous and works a manifest injustice." *Yankton Sioux Tribe v. Podhradsky*, 606 F.3d 994, 1005 (8th Cir. 2010).

In the penultimate paragraph of its August 5, 2014, order remanding this case for further consideration, this Court stated:

> Taken as a whole, the record supports Dr. Chowdhry's limitations and does not support disregarding them. If a treating medical expert's opinion is supported by the record, *which it is in this case*, it must be given controlling weight, i.e. it must be adopted.

(AR 727 (emphasis added) (internal citations omitted)).

The Commissioner argues that these words merely recite the law and do not amount to a finding of fact that is binding under law of the case doctrine. (Doc. 15, at 5). The Commissioner emphasizes the final paragraph of the order, which remands the case "for further consideration of the opinion of the treating psychiatrist" but does not explicitly instruct that Dr. Chowdhry's opinion take controlling weight. (*Id.*, at 6

8

(quoting AR 728)). In the Commissioner's view, the Court's order "simply found the ALJ did not adequately explain his reasons for disregarding Dr. Chowdhry's assessment." (*Id.*, at 5).

I find the plain language of the order to align with claimant's interpretation. The Court is clear in articulating that "in this case" the treating physician's opinion is supported by the record. This finding appears as an interjectory clause within the Court's statement of the legal rule that "[i]f a treating medical expert's opinion is supported by the record . . . it must be given controlling weight." The order therefore mandates that the treating physician's opinion be given controlling weight *in this case*. It was not an invitation for the ALJ to reconsider the record anew, nor was it a request that the ALJ bolster his rejection of Dr. Chowdhry's opinion with novel explanations. The Court mandated that the ALJ reconsider his disability determination only after properly applying controlling weight to Dr. Chowdhry's opinion. This instruction was not followed.

The ALJ makes no indication that his decision to reject Dr. Chowdhry's opinion was justified by a clear error or manifest injustice in this Court's instruction on remand. Therefore, the ALJ's failure to apply controlling weight may only be excused if it rests on substantially new evidence. *Yankton Sioux Tribe*, 606 F.3d at 1005. I find that it does not.

The analysis presented by the administrative decision here reviewed is largely derivative of the ALJ's first decision rejecting Dr. Chowdhry's expert medical opinion. (*Compare* AR 705-08, *with* AR 635-39). Where the instant decision deviates from the first, the analysis does not rest on substantially new evidence. New to the decision are five previously-uncited instances where clinical notes dated between December 2009 and December 2010 describe claimant's mood as "stable" or indicate the benefits of her medication. (AR 638). However, none of these references reflect "substantially different" evidence. Each cites information that was available in claimant's medical

records at the time of the ALJ's first decision on August 29, 2012, and considered by the Court in its order to remand the case for application of controlling weight to Dr. Chowdhry's opinion.

The ALJ's second decision also presents a new survey of clinical records from claimant's mental health treatment and therapy between December 2012 and November 2014—the period roughly between the issuance of the Commissioner's first final decision and claimant's date last insured. (AR 639-40). This summary generally illustrates that claimant's GAF score remained at 50 throughout this timespan despite claimant's reports of "ups and downs." (AR 639). The ALJ found this trend to "further support[] . . . that GAF scores have little probative value." (AR 639). However, the ALJ's critique of the GAF scoring system in general does not comprise new evidence relevant to weighing Dr. Chowdhry's opinion. Indeed, in its order to remand, the Court observed that "[t]he Commissioner of Social Security ha[d] recently found that GAF scores are not a reliable rating." (AR 726). The Court considered claimant's history of GAF scores only to the extent that they were generally consistent with the qualitative conclusions in Dr. Chowdhry's opinion, contrary to the reasoning of the ALJ's first decision. (AR 727). Thus, I conclude that claimant's subsequent GAF scores has no bearing upon the credibility of Dr. Chowdhry's opinion, as expressed in his August 3, 2012, interrogatory responses.

Finally, the ALJ included in the second decision several new suggestions that claimant's mental health symptoms were connected to non-medical circumstances and lifestyle choices.[4] These new rationales for doubting Dr. Chowdhry's opinion do not rest

---

[4] The ALJ suggests that claimant's increased mental health symptoms in April and July of 2010 were attributable to claimant's "familial issues," including her inability to care for her son, as well as her "drug abuse and failure to comply with prescribed treatment." (AR 636). The decision also speculates that claimant's increased depression in March 2011 was caused by her

on any evidence that was unknown at the time of claimant's first hearing. The same can be said of the new assertion that the doctor's opinion should be discredited because it was completed as a form questionnaire. (AR 638).

I therefore find that the ALJ's second decision to reject Dr. Chowdhry's opinion was not based on substantially different evidence from the first decision. Furthermore, nothing in the transcript of claimant's second hearing on March 20, 2015, or elsewhere in the administrative record indicates the introduction of new, material evidence not invoked by the ALJ. Thus, the ALJ committed a procedural error in failing to assign Dr. Chowdhry's opinion controlling weight.

### C. Prejudicial Error

Procedurally defective administrative decisions need not automatically be set aside. Rather, "[e]ach case must be determined on its individual facts and, if the errors are deemed to be minor and insubstantial, the administrative order should be enforced notwithstanding." *Trifid Corp.*, 10 F. Supp.2d at 1095; *see also United States v. Newell*, 516 F. Supp.2d 971, 974-75 (S.D. Iowa 2007) (noting that "an agency's failure to follow its own rules and regulations does not, however, always require reversal of the agency's actions" and citing cases). The burden to show substantial prejudice rests with the party seeking review. *Sanders*, 556 U.S. at 409.

Here, the substantial prejudice to claimant resulting from the ALJ's failure to follow the Court's instruction on remand could not be clearer. Claimant explains that, during her second administrative hearing, the ALJ posed several "hypothetical questions about specific limitations from Dr. Chowdhry's opinion[,] and the vocational expert explained each limitation precluded competitive work." (Doc. 14, at 8). Specifically,

---

recent denial of disability benefits, the winter season, and the fact that claimant had been contacted by a bill collector. (AR 638).

the ALJ asked the vocational expert whether light or sedentary work existed in the national economy that an individual of claimant's age, education, past work, and various limitations[5] would be capable of performing. (AR 688-89). The vocational expert testified that such a person would be capable of performing light jobs including "marker," "folder," and "inserting machine operator," and sedentary jobs including "document preparer," "addresser," and "surveillance-systems monitor." (*Id.*). The ALJ then addressed Dr. Chowdhry's opinion, asking whether employment existed for a similar individual with the added limitation of "not paying attention, [or] drifting" for twenty percent of the work day. (AR 690). The vocational expert stated that this limitation "would preclude full-time, competitive employment." (*Id.*). When claimant's counsel asked about a similar individual who is also "unable to remember locations and work-like instructions for up to 20 percent of the work day or work week," the expert confirmed that "[t]hey would not be able to maintain competitive employment." (AR 692).

Among other conclusions, Dr. Chowdhry's August 3, 2012, interrogatories stated that claimant would be unable to remember locations and work-like procedures during more than twenty percent of the work day or work week, and that claimant would be unable to maintain attention and concentration for extended periods of time during more than twenty percent of the work day or work week. (AR 887-88). Had the ALJ assigned Dr. Chowdhry's opinion controlling weight, the testimony of the vocational expert

---

[5] For the purpose of these hypotheticals, the ALJ described the following Step-Four limitations: "Occasional climb, balance, stoop, kneel, crouch, crawl; no exposure to extremes of cold, heat, or humidity; . . . simple, routine, repetitive tasks; occasional interaction with coworkers; no interaction with the general public; occasional supervisors; coworkers, only small groups; no work at production rate pace." (AR 688). With the exception of interaction with the general public, these hypothetical limitations match those assigned in the ALJ's decision. (AR 634). The fact that the limitations ultimately assigned by the ALJ did not include interaction with the general public does not disturb my confidence that claimant was substantially prejudiced by the ALJ's error.

establishes that these limitations—when combined with those found by the ALJ—would preclude claimant from full-time employment. However, upon rejecting Dr. Chowdhry's opinion, the ALJ found at Step Five that claimant would have been able to perform such occupations as "Marker," "Folder," "Inserting machine operator," "Document preparer," "Addresser," and "Surveillance system monitor." (AR 644). The ALJ's finding relied expressly on the vocational expert's testimony. (*Id.*). Had the ALJ assigned controlling weight to the limitations described in Dr. Chowdhry's interrogatories, reliance on the testimony of the vocational expert would have compelled the finding that claimant was not capable of maintaining competitive employment.

Therefore, claimant has persuasively shown that the ALJ's improper rejection of Dr. Chowdhry's opinion substantially prejudiced claimant and precipitated the Commissioner's final denial of benefits. The errant decision must be set aside.

## V. CONCLUSION

For the reasons set forth herein, I find that the ALJ failed to carry out the Court's unambiguous instruction to apply controlling weight to the opinion of claimant's treating psychiatrist on remand. This error was not justified by the introduction of new evidence, and it substantially prejudiced the outcome of claimant's case. Therefore, I respectfully recommend that the District Court **set aside** the ALJ's decision and **remand** this case with clear instructions to give Dr. Chowdhry's opinion controlling weight.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well

as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

    **IT IS SO ORDERED** this 17th day of October, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa